## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **GLOBAL GOVERNANCE ADVISORS, INC.** § § § | |
| PLAINTIFF, § | |
| v. § § | CIVIL ACTION NO. _____ |
| **KINGDOM TECHNOLOGIES WORLDWIDE, LLC; RICK BRAZELTON; ZIEMIA PETROLO, INC.; RONNIE JORDAN; and JIM SHEPARD D/B/A GLOBAL LINK ENERGY** § § § § § § § § | |
| DEFENDANTS. | |

### PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Global Governance Advisors, Inc. and alleges as follows:

### PARTIES

1. Plaintiff Global Governance Advisors, Inc. is a Canadian corporation.

2. Defendant Kingdom Technologies Worldwide, LLC is a Texas limited liability company with its principal place of business in Willis, Texas. Its registered agent is United States Corporation Agents, Inc., 9900 Spectrum Dr., Austin, Texas 78717.

3. Defendant Rick Brazelton is an individual residing in Texas with his principal address being 15900 E FM 1097 Rd., Willis, Texas 77378.

4. Defendant Ziemia Petrolo, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Its registered agent is Eastbiz.com, Inc., 5348 Vegas Drive, Las Vegas, Nevada 89108.

5. Defendant Ronnie Jordan is an individual residing in Nevada with his principal address being 5348 Vegas Drive, Las Vegas, Nevada 89108.

6. Defendant Jim Shepard d/b/a Global Link Energy is an individual residing in North Carolina.

## JURISDICTION AND VENUE

7. The amount in controversy, without interest and costs, exceeds the sum or value of $75,000.00. The basis for jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332. Each of the Defendants has at all relevant times conducted business in Texas, in this district, through the solicitation of investments in KTWW and/or providing purported services related to investments in KTWW. Defendants KTWW and Brazelton solicited Plaintiff to invest in KTWW in person in Texas in this district. Additionally, Defendants KTWW and Brazelton have purposefully availed themselves of the privilege of conducting business in Texas and have directed correspondence and electronic communications to citizens of Texas through the mail or the wires. Further, the detrimental effects of the Defendants' actions and misdeeds have occurred within the State of Texas and resulted in damages to Plaintiff. Plaintiff's claims arise out of Defendants' specific contacts with Texas. As such, Defendants are subject to the jurisdiction of this Court.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) and (b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTS

9. As early as September 2014, Rick Brazelton ("Brazelton") associated with Anthony Gordon, a California attorney, to meet investors. Brazelton sought introductions to individuals and companies that would be interested in making large investments in his company Kingdom Technologies Worldwide, LLC ("KTWW"). Brazelton represented to potential

investors that KTWW would use the investment money to lease third party tank farm storage facilities for refined fuel products.

10. Brazelton represented that he had relationships with wealthy individuals and entities that were purchasers and resellers of jet fuel and petroleum related products. Once KTWW received an investment for a tank farm lease, Brazelton represented that he would use his connections to procure jet fuel and related products to be filled in the storage tanks and resold for a profit to the investor. Brazelton represented that Ronnie Jordan ("Jordan") and his company Ziemia Petrolo Inc. ("Ziemia") were one such jet fuel connection and that Jordan was the primary liaison between KTWW and the overseas tank farm operators.

11. In 2015, Brazelton was introduced to Global Governance Advisors, Inc. ("Plaintiff" or "GGA"). In order to secure an investment for Plaintiff in purported tank storage units, Brazelton represented to Plaintiff that the jet fuel and/or refined petroleum products would be filled and stored in the prospective tank farms and sold twice each month. Brazelton further represented that each time the storage tanks were filled with petroleum product and sold, Plaintiff would receive a 20% return on investment. Brazelton further represented to Plaintiff that KTWW's partners in similar ventures included JP Morgan, HSBC (Hong Kong), China Construction Bank, Merrill Lynch/Bank of America, Bank of Communication (Shanghai), and Bank of Dubai with a total capital commitment of over $300 million.

12. Additionally, Brazelton represented to GGA that Ziemia and/or Jordan had invested approximately $200 million in the tank farm venture and that Jordan and/or Ziemia had obtained a substantial letter of credit to secure the purchase of petroleum product that would be stored in the leased tank farms.

13. Plaintiff and KTWW eventually executed that Joint Venture Agreement dated July 24, 2015 (the "JVA"). A true and correct copy of the JVA is attached hereto as Exhibit "A." Under the JVA, Plaintiff's role was to provide funding for the joint venture to enter into a lease for tank storage space. KTWW's duties included buying and selling petroleum products and using its professional relationships to effectuate the sale of petroleum products.

14. In September 2015, Plaintiff contributed $635,000 cash to KTWW with the expectation that Brazelton, on behalf of KTWW, would use the money to lease tank storage space in Russia for the resale of petroleum products to end users.

15. Plaintiff contributed the money pursuant to the JVA with the expectation that Plaintiff would receive its $600,000 investment back along with 20% of the invoice amount of each transaction taking place in storage tanks leased by KTWW. On September 3, 2015, GGA wired $298,000.00 to KTWW for the purported purpose of entering into a tank farm lease storage agreement. KTWW represented to Plaintiff that the $298,000 would be used to pay for a storage services agreement between KTWW and Ziemia as lessors, and JSC'SC Marine Bulk Shipping Company ("JSMB") as lessee for the lease of jet fuel and condensate storage tanks with 1,000,000 barrel capacity located in Russia. KTWW sent Plaintiff a purported storage agreement purportedly executed by Brazelton on behalf of KTWW, Jordan on behalf of Petrolo, and Mikhail Zerev on behalf of JSMB.

16. Plaintiff received a purported invoice from JSMB for $298,800 for the Russian tank farm lease. Upon information and belief, the $298,000 was wired from Plaintiff to HSBC Hong Kong bank for the benefit of Pinto Zob Limited ("Pinto").

17. On or about September 1, 2015, representatives from GGA met Brazelton in Houston, Texas. Over dinner, Brazelton assured them that the tank farm venture was proceeding

as scheduled and everything was fine. At the dinner, Brazelton requested that GGA wire an additional $17,000 to pay Jim Shepard d/b/a Global Link Energy ("Shepard") for petroleum sale logistics services. On September 2, 2015, GGA wired $17,000 to KTWW. Upon information and belief, KTWW paid the $17,000 to Shepard.

18. On September 10, 2015, Brazelton advised GGA that the tank farm was in receipt of the $298,000 and the leased storage tanks were ready to receive jet fuel. However, Brazelton contacted Plaintiff on or about September 17, 2015 again asking Plaintiff to wire additional funds to KTWW. Brazelton represented to Plaintiff that the Russian tank farm operator was forcing KTWW to lease tank storage units with a 4 million barrel capacity, rather than the 1 million barrel capacity as the parties had originally agreed to lease. Brazelton requested that Plaintiff wire KTWW an additional $319,200 to cover the extra expense of leasing the 4 million barrel capacity tank farm.

19. Plaintiff wired the additional funds to KTWW in reliance on Brazelton's representation that Plaintiff would receive a 20% return on its investment the following week. The $319,200 wire was received by Hangseng Bank Limited Hong Kong for the benefit of Sunxi International Limited.

20. By September 28, 2015, the storage tanks still had not been filled with jet fuel. Brazelton indicated that there was a legal hang-up with the Russian Federation, but sent a purported receipt for 4 million barrels of jet fuel to Plaintiff. Brazelton further represented that a refinery was transferring the jet fuel, and the tanks would be filled immediately. Upon information and belief, the tank farms were never filled with jet fuel.

21. From October 2015 until January 2016, Plaintiff was not in regular communication with KTWW or Brazelton. Plaintiff received correspondence from KTWW to

JSMB dated January 5, 2016 demanding JSMB return $618,000 to KTWW pursuant to the "no splash" clause of the tank storage agreement. The letter confirmed that the leased storage tanks had never been filled with jet fuel.

22. To date, Plaintiff has not received repayment of its investment of $635,000 or any return on its investment as promised by KTWW and pursuant to the JVA. Defendants have absconded with Plaintiffs money under the guise of a failed Russian venture and investment. In reality, the Russian investment was never a viable opportunity, and Defendants repeatedly assured Plaintiff through intentional misrepresentations that everything was fine and Plaintiff would receive a return.

## COUNT I
## Fraud – Against Brazelton and KTWW

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

23. Defendants Brazelton and KTWW made the representations recited above with the knowledge that they were false, including, but not limited to, representations concerning the validity of the Russian tank farm investment, the actions Brazelton was taking with respect to Plaintiff's investment, the uses of Plaintiff's investment funds, and the status of Plaintiff's investment in the tank farms. Defendants Brazelton and KTWW also intentionally omitted material facts to Plaintiff regarding their actions with respect to Plaintiff's investment, the viability of the Russian tank farm investment, the uses of the investment funds, and the status of Plaintiff's investment.

24. These representations and omissions occurred orally as well as in writing, including in conversations, emails, and a face-to-face meeting.

25. Defendants Brazelton and KTWW's actions and representations were calculated and intended to deceive Plaintiff to conceal the fraud from it and lull it into making and continuing making investments in KTWW. Because of Defendant Brazelton and KTWW's concealments, misrepresentations, and manipulations, Plaintiff could not have discovered the fraud in the exercise of reasonable diligence.

26. Plaintiff reasonably and justifiably relied upon these representations.

27. Plaintiff has suffered loss as a proximate result of Defendant Brazelton and KTWW's fraud.

## COUNT II
## Fraudulent Inducements – Against KTWW and Brazelton

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

28. Defendants KTWW and Brazelton made the material representations recited above to Plaintiff in order to induce it into entering into the JVA and continue wiring cash to KTWW. These representations were made orally and in writing.

29. On information and belief, Defendants KTWW and Brazelton knew at the time they induced Plaintiff to invest that they did not intend to comply with their representations or their fiduciary duties.

30. Defendants Brazelton and KTWW's actions and representations were calculated and intended to deceive Plaintiff and to conceal the fact that the said Defendants intended to carry out the fraudulent scheme described above and to lull them into making and continuing its investments in KTWW. Because of Defendant Brazelton and KTWW's concealments, misrepresentations and manipulations, Plaintiff could not have discovered the fraud in the exercise of reasonable diligence.

31. Plaintiff reasonably and justifiably relief upon these fraudulent inducements in executing the JVA, making the investment, and in continuing to keep its investment in KTWW.

## COUNT THREE
### Breach of Fiduciary Duty – Against Brazelton and KTWW

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

32. Texas law recognizes that joint venture partners and the partners' representatives owe each other fiduciary duties. Defendants KTWW and Brazelton each owed a fiduciary duty to Plaintiff.

33. Defendants KTWW and Brazelton breached their respective duties by engaging in the aforementioned conduct. Further, Defendants Brazelton and KTWW acted in bad faith.

34. Plaintiff suffered loss as a proximate result of this breach of duty.

## COUNT FOUR
### Unjust Enrichment – Against KTWW and Brazelton

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

35. Defendants KTWW and Brazelton have received benefits from Plaintiff in the form of Plaintiff's investments in KTWW. Upon information and belief, Brazelton has used these investments for his personal benefit.

36. Defendants KTWW and Brazelton would be unjustly enriched if they are not required to disgorge funds they obtained fraudulently and illegally from Plaintiff.

## COUNT FIVE
### Money had and Received – Against KTWW and Brazelton

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

37. Defendants KTWW and Brazelton have wrongfully received and retained investments from Plaintiff.

38. As a result of this conduct, Plaintiff has suffered loss.

## COUNT SIX
### Conversion – Against KTWW and Brazelton

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

39. Defendants KTWW and Brazelton have wrongfully exercised dominion and control over Plaintiff's property in denial of its rights. Specifically, KTWW and Brazelton have taken control over $635,000 belonging to Plaintiff.

40. As a result of this conduct, Plaintiffs have suffered loss.

## COUNT SEVEN
### Avoidance of Fraudulent Transfer – Against Jim Shepard d/b/a Global Link

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

41. Pursuant to Tex. Bus. & Comm. Code § 24.006(a), Plaintiff seeks to avoid fraudulent transfers made by KTWW to Shepard, and/or for damages resulting from the fraudulent transfer of property from KTWW to Shepard.

42. KTWW and Brazelton sought $17,000 from Plaintiff to pay Shepard for alleged logistics services related to jet fuel sales. Plaintiff wired the money to KTWW on September 2, 2015.

43. On or about August 28, 2015, KTWW paid Shepard $17,000. At the time KTWW was insolvent or became insolvent as a result of the transfer, in that the sum of KTWW's debts were greater than all of its assets at a fair valuation. KTWW was undercapitalized and relied on the investments of Plaintiff for all operations.

44. KTWW did not receive reasonably equivalent value in exchange for the $17,000 paid to Shepard. The tank farms were never filled with jet fuel, therefore, it follows that any logistics related to the failed efforts to obtain jet fuel did not provide value to KTWW.

45. KTWW has at least one outstanding creditor at the time the $17,000 transfer was made to Shepard, Plaintiff.

46. Therefore, Plaintiff has demonstrated that the $17,000 transfer from KTWW to Shepard constituted a fraudulent transfer under Tex. Bus. & Comm. Code § 24.006(a) such that Plaintiff is entitled to a judgment to recover the transfer made to Defendant Shepard.

## COUNT 8
### Breach of Contract – Against KTWW

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein

47. KTWW breached the JVA in multiple instances. Under the JVA, KTWW was to "buy/sell petroleum product(s) and to bring potential buyers of petroleum products to the table for purchasing large amounts of petroleum products . . ." Furthermore, under the JVA, KTWW was required to appoint "a [m]anaging director and/or nominated representative of the [joint venture] to expedite contracts . . ." and "maintain[] and nurture[]" relationships with buyers and sellers of jet fuel and petroleum product.

48. KTWW failed to perform each of its obligations enumerated above, and each failure constitutes an independent material breach of contract. Plaintiff fulfilled its obligations under the JVA by contributing over $600,000 as required per the terms of the JVA. Specifically, KTWW was never able to deliver jet fuel or petroleum products to the purported leased storage tank farms as is evidenced by its January 2016 letter to JSMB.

49. KTWW's multiple failures to perform constitute material breaches of the JVA which proximately caused Plaintiff's actual damages including the loss of Plaintiff's investment and any return on investment

## COUNT 9
### Conspiracy – Against Jordan, Ziemia, Brazelton, and KTWW

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

50. Defendants, all or some, or alternatively in separate groups: Brazelton with KTWW, Brazelton with Jordan, Brazelton with Ziemia, Jordan with Ziemia, Jordan with KTWW, and Ziemia with KTWW, have conspired to engage in the conduct set out above in this lawsuit. They all, or alternatively in separate groups, had knowledge of, agreed to, and intended a common objective or course of action that resulted in damages to Plaintiff. Defendants performed acts to further the conspiracy and are jointly and severally liable, together or alternatively in their separate groups, for the actual damages awarded in this matter, and for exemplary damages as the trier of fact finds appropriate.

## COUNT 10
### Aiding and Abetting – Against Jordan and Ziemia

Plaintiff incorporates the allegations in the preceding paragraphs 1- 22 as if fully stated herein.

51. Brazelton and KTWW committed the torts set out above. Jordan and Ziemia have knowledge of some or all of the actions and non-actions of Brazelton and KTWW and the fact that such conduct was wrongful. Jordan and Ziemia intended to and in fact did assist Brazelton and KTWW in committing these wrongful acts, either some or all in unison, or alternatively in separate groups: Brazelton with KTWW, Brazelton with Jordan, Brazelton with Ziemia, Jordan

with Ziemia, Jordan with KTWW, and Ziemia with KTWW, and such assistance was a substantial factor in causing the damages to Plaintiff as set out above.

## DAMAGES

52. Plaintiff seeks actual damages constituting the sum of money Plaintiff invested in KTWW, $635,000. These damages were proximately caused by Defendants' breach of contract, fraud, and/or breaches of fiduciary duty as described herein.

53. Plaintiff also seeks damages from Defendant Shepard and/or avoidance of the $17,000 transfer KTWW made to Shepard in August 2015. The transfer was made at a time when KTWW was insolvent, and KTWW did not receive reasonably equivalent value from Shepard for the transfer.

54. Finally, Plaintiff seeks exemplary damages by virtue of certain Defendants' intentional, malicious, and extreme conduct in committing the fraud, breaches of fiduciary duty and other actions complained of herein.

## ATTORNEY FEES & COSTS

55. Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code, Chapter 38, because this suit includes a claim for breach of contract.

## PRAYER

56. For these reasons, Plaintiff asks for judgment against Defendants KTWW, Brazelton, Ziemia, Jordan, and Shepard for the following:

    a.    Judgment for all actual and consequential damages as described above;

    b.    Exemplary damages to be awarded by the trier of fact;

    c.    Prejudgment interest and post-judgment interest;

  d. Avoidance of the transfer to Shepard;

  e. Reasonably attorney fees and expenses;

  f. Costs of suit;

  g. All other relief, both legal and equitable, to which Plaintiff my show itself just entitled.

Respectfully submitted,

**LANGLEY & BANACK, INC.**
745 E. Mulberry, Suite 700
San Antonio, TX  78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

By: */s/ Allen M. DeBard*
**ALLEN M. DeBARD**
State Bar No. 24065132
Federal Bar No. 1066711
adebard@langleybanack.com

ATTORNEYS FOR PLAINTIFF, GLOBAL GOVERNANCE ADVISORS, INC.